Rockingham Probate Court,
No. 4765.

IN RE DANIEL F. BORTHWICK ESTATE.

Argued November 3, 1959.

Decided December 31, 1959.

*Ernest R. D'Amours,* Director of Charitable Trusts (by brief and orally), *pro se.*

*Boynton, Waldron & Dill (Mr. Boynton* orally), for Susan Elizabeth Hunt, as trustee.

LAMPRON, J. The first question transferred is "Does the will contemplate that the trust here involved shall be administered at all times by two trustees?"

The granting clause of the will which creates the trust devises the residue of the estate, in this instance practically the whole estate, "to my niece, Susan Elizabeth Hunt and to my brother, James A. Borthwick, to have and to hold the same, to them and the survivor of them and their successors and assigns forever."

Although the will repeatedly refers to "said Trustees and their successors" this language is used in clauses directing disposition of the estate at the death of Susan to certain beneficiaries "in fee simple and freed of any trust." It seems unlikely that the testator intended two trustees should be available merely for the purpose of turning the corpus over to these residuary beneficiaries. Furthermore the will contains no provision indicating an intention that the number of trustees should never fall below two. Restatement (Second), Trusts, *s.* 108, *comment* b.

The family history shows that the testator and his wife, who had no children, raised their orphan niece, Susan, as their daughter and that she considered and acted toward them in the same manner. James, the other trustee named in the will, worked with his brother, the testator, in the latter's business for many years. "In his later years Daniel . . . came to rely more and more on the business

ability of James." The testator's business was sold shortly after the latter's death.

The will provides that neither Susan nor James "shall be required to file any bond, or to furnish any surety upon any bond . . . in their capacity as Trustees under this will." The trustees are authorized "to sell and convey any and all property . . . of the trust fund . . . without . . . authority of any court, and to invest and reinvest the proceeds of any such sale or sales as they may deem wise, freed from the restraint of any law governing trust investments."

Considering the will as a whole; the relationship of the testator with the trustees; the fact that he granted them broad discretionary powers and wanted them to serve without bond and the absence of a provision that their number should not be reduced, it is our opinion that the testator intended that the trust be administered by Susan and James and in the event of the decease of one of them, by the survivor, in this instance, Susan. *Amoskeag Trust Co.* v. *Haskell,* 96 N. H. 89, 91; 1 Restatement (Second), Trusts, s. 9, *comment* b; anno. 151 A. L. R. 1308.

The answer to the first question is "No."

The second question is "Does the fact that the present trustee is also the life tenant of the trust raise a conflict of interest which compels the Court to appoint a second trustee? If not, is it a matter which may be considered in determining whether a second trustee should be appointed under the language of this will?"

There is no intrinsic incompatability in the situation. Susan, in her capacity as surviving trustee, holds the entire legal interest in all of the trust property. As an individual, Susan, along with others, has an equitable interest in the trust estate. *Spengler* v. *Kuhn,* 212 Ill. 186; 1 Restatement (Second), Trusts, s. 99 (2).

The Director argues however that because Susan is the sole life beneficiary of the trust a "potential conflict arises out of the fact that a life beneficiary, who is also a trustee, is naturally interested in getting all the income that a fund can possibly produce as against the interest of the same trustee to maintain a secured permanent fund for the remainderman. Hence, the inclination to engage in more speculative investments which generally can be expected to produce a greater yield for the beneficiary, but less security for the remainderman."

When the testator executed his will on June 28, 1932, Susan

was about 49 years of age and James was 66. It is reasonable to assume that when he devised his property in trust to Susan and James and the survivor of them the probability that Susan might at some time become the surviving trustee must have entered his mind. Furthermore there is no evidence that Susan as trustee has acted in any manner detrimental to the interest of the other beneficiaries. We see no such conflict of interest as would compel the probate court as a matter of law to appoint a second trustee. *Sweet* v. *Schliemann*, 95 N. Y. App. Div. 266, 270; *Spengler* v. *Kuhn, supra;* 1 Scott, Trusts (2d *ed*) *s.* 108.1, *p.* 788.

The answer to the first part of the second question is "No."

RSA 564:10 grants to the probate court discretionary powers in the appointment of trustees. *Carr* v. *Corning*, 73 N. H. 362, 365; *Rockwell* v. *Dow*, 85 N. H. 58. In the exercise of these powers all pertinent circumstances may and should be considered by it. When as in this case the will does not specifically provide for the appointment of a successor to a deceased trustee, the inquiry is whether it will be more conducive to the proper administration of the trust to fill the vacancy. *In re Koretzky's Estate*, 19 N. J. 352, 359; 1 Scott, Trusts (2d *ed.*) *s.* 108:1, *supra*. The fact that the present sole surviving trustee is also the life tenant of the trust is only one of the factors to be considered by the probate court in determining this issue.

The answer to the second part of the last question is "Yes."

*Remanded.*

All concurred.